# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RODERICK HARRIS, SHAWN WILSON, JOHN MAY, ZHEN LIN, DERRICK DUNLAP, GEORGE WYNN, and ANDREW CARRIER, *Plaintiffs*, v. BMW OF NORTH AMERICA, LLC, *Defendant*. | § § § § § § § § § § § § | Civil Action No. 4:19-CV-00016 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) or, in the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 (Dkt. #11).

The Court, having considered all the pleadings, motions, and relevant evidence, finds that the Defendant's Motion should be **DENIED**.

### BACKGROUND

**I.    Factual Summary**

Plaintiffs Roderick Harris, Shawn Wilson, John May, Zhen Lin, Derrick Dunlap, George Wynn, and Andrew Carrier ("Plaintiffs") are Texas residents and purchasers of BMW vehicles. Defendant, BMW of North America, LLC ("Defendant"), is a Delaware limited liability company and the wholesale distributor of BMW vehicles sold in North America. Specifically, Defendant is engaged in the business of importing, assembling, marketing, distributing, and warranting BMW vehicles that are ultimately sold or leased in North America. Defendant does not itself sell or lease BMW vehicles; instead, it leaves the business of selling or leasing BMW vehicles to its network of regional and local BMW dealers.

Plaintiffs each own a BMW vehicle equipped with a V8, twin-turbocharged engine, referred to as the "N63." BMW released the N63 in 2008, advertising it as the next generation high performance engine designed for certain BMW vehicles, including 5 series, 6 series, 7 series, X5, and X6 models produced from 2009–2014. Apparently, vehicles equipped with the N63 have experienced a variety of problems since the engine's release in 2008. In particular, purchasers of N63-powered vehicles, including Plaintiffs, claim that the N63 consumes excessive amounts of engine oil, requiring frequent oil changes and engine repairs. And this alleged oil consumption defect, Plaintiffs claim, has diminished the value of their vehicles.

The amended complaint provided the following details about Plaintiffs and the subject vehicles: Roderick Harris purchased a 2010 BMW 5 Series 550i on October 30, 2013 for $51,312.80; Shawn Wilson purchased a 2009 BMW 7 Series 750i on January 22, 2013 for $46,202.80; John May purchased a 2012 BMW X5 XDrive 50i on December 26, 2015 for $51,607.14; Zhen Lin purchased a 2010 BMW 5 Series 550i[1] on August 11, 2011; Derrick Dunlap purchased a 2014 BMW 5 Series 550i on July 31, 2017 for $45,810.72; George Wynn purchased a 2013 BMW 7 Series 750i on August 6, 2014 for $78,776.40; and Andrew Carrier purchased a 2012 BMW 7 series 750i on December 21, 2015 for $44,974.50.

Plaintiffs assert multiple grounds for relief. First, Plaintiffs claim that Defendant made and subsequently breached express and implied warranties as to each vehicle. Second, Plaintiffs claim that Defendant's breach of warranty and failure to disclose the engine defects despite having knowledge of the defects constituted deceptive trade practices under the Texas Deceptive Trade Practices-Consumer Protection Act.

---

[1] The amended complaint does not provide the price of Lin's vehicle.

Plaintiffs submit that the Court has jurisdiction over the action pursuant to the Magnuson-Moss Warranty Act ("Magnuson Moss"), 15 U.S.C. § 2310; diversity jurisdiction, 28 U.S.C. § 1332; and supplemental jurisdiction, 28 U.S.C. § 1367.

## II. Procedural History

Plaintiffs filed their original Complaint against both Defendant and Bavarian Motor Works on January 8, 2019 (Dkt. #1). On February 6, 2019, Defendant and Bavarian Motor Works filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) or, in the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 (Dkt. #8). On February 20, 2019, Plaintiffs filed their First Amended Complaint, in which they made substantially the same allegations as in their original Complaint but listed BMW of North America, LLC as the sole Defendant (Dkt. #10).

On March 6, 2019, Defendant filed a Motion to Dismiss asserting substantially the same grounds for dismissal as asserted in its February 6 Motion (Dkt. #11). On March 20, 2019, Plaintiffs filed a Response (Dkt. #15). On March 27, 2019, Defendants filed a Reply (Dkt. #16). On May 15, 2019, Plaintiffs filed Notice of Supplemental Authority (Dkt. #17). On May 29, 2019, Defendant filed a Response to Plaintiffs' Notice of Supplemental Authority (Dkt. #19). On August 21, 2019, Plaintiffs filed a second Notice of Supplemental Authority (Dkt. #21). On September 16, 2019, the Court ordered Plaintiffs to submit supplemental briefing regarding Defendant's membership (Dkt. #22). On September 17, 2019, Plaintiffs filed briefing in response to that Order (Dkt. #23).

## LEGAL STANDARD

### I. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate

the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

**II.     12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When

considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

I.     12(b)(1)

Defendant moves the Court to dismiss under Rule 12(b)(1), arguing that (1) Plaintiffs lacked Article III standing to bring their claims, and (2) the Court lacks subject matter jurisdiction over this action under 28 U.S.C. § 1332 and under Magnuson Moss. The Court addresses these arguments in turn.

    *A. Article III Standing*

Defendant's first argument is that all claims should be dismissed because Plaintiffs lack Article III standing. The Court disagrees.

The elements of Article III standing are: (1) an injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted).

Here, the injuries Plaintiffs allege in their complaint have already occurred. Plaintiffs claim that their vehicles have lost substantial value due to the alleged engine defect, and they claim out-of-pocket expenses for extra engine oil and frequent oil changes. Plaintiffs further ask the Court to, among other things, award money damages for any economic losses sustained. Taking Plaintiffs' claims as true, there is no doubt that Plaintiffs' complaint alleges economic damages

that satisfy Article III's injury in fact, causation, and redressability requirements. Accordingly, Plaintiffs have standing to bring this action.[2]

   B.  28 U.S.C. § 1332: Diversity Jurisdiction

Defendant next argues that the Court lacks both diversity jurisdiction and jurisdiction under Magnuson Moss. After consideration, the Court is of the opinion that it has diversity jurisdiction over the action. Accordingly, the Court does not address the issue whether it has jurisdiction under Magnuson Moss.

28 U.S.C. § 1332 provides that the United States district courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

Subject matter jurisdiction exists under § 1332 only when there is complete diversity of citizenship between the parties. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). The citizenship of a limited liability company ("LLC") is based on the citizenship of the LLC's members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 393 (5th Cir. 1991). The party invoking jurisdiction under § 1332 is responsible for showing that the parties are completely diverse. *See Menchaca*, 613 F.2d at 511. Failure to allege each party's citizenship requires dismissal. *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975); *see also Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

Moreover, each plaintiff must individually meet the statutory amount in controversy; when multiple plaintiffs' claims are joined together in the same lawsuit, one plaintiff cannot "ride in on

---

[2] The Court notes that the same lack-of-standing argument, based on substantially similar facts, was made by the defendant and rejected by the court in *Bang v. BMW of North America, LLC*, Civil Action No. 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016).

another's coattails." *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973). Each plaintiff invoking jurisdiction under § 1332 must separately allege damages that exceed $75,000. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1330 (5th Cir. 1995). An exception to this general rule exists in the limited situation when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *R & H Oil*, 63 F.3d at 1330 (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). In that situation, the plaintiffs may aggregate their clams to meet the jurisdictional amount; but they may do so only after satisfying the court that their claims of right are integrated, meaning they arise from the same legal source. *Id.*

1. Diversity of Citizenship

Plaintiffs carried their burden of showing that the parties are completely diverse. The Court ordered Plaintiffs to provide information about Defendant's membership (Dkt. #22), and Plaintiffs' briefing (Dkt. #23) satisfied the Court that Defendant's membership does not include any Texas resident. As Plaintiffs are all Texas citizens, the parties are completely diverse.

2. Amount in Controversy

The individual claims in this action do not meet the aggregation standard for purposes of satisfying the amount in controversy because they do not "unite to enforce a single title or right in which they have a common and undivided interest." *R & H Oil*, 63 F.3d at 1330. To be sure, Plaintiffs are properly joined because their claims arise out of the same transaction, occurrence, or series of transactions or occurrences. *See* FED. R. CIV. P. 20. Plaintiffs all claim the same engine defect, arising from the same engine model, present in vehicles produced by the same car manufacturer, during substantially the same time period. *See, e.g.*, *Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir.1990) (holding that the district court did not abuse its discretion in hearing together

plaintiffs' claims that alleged the same acts, committed by the same defendant, during the same period of time).

Ultimately, however, this lawsuit involves seven *distinct* causes of action. This case does not present a situation in which one state law claim creates a single right of recovery in all seven plaintiffs jointly; rather, though the causes of action may be the same, Texas state law gives each individual plaintiff a right to recover *independent* of the remaining plaintiffs' recoveries. *See generally id.* at 1330–33 (explaining the standard for when multiple plaintiffs' claims are "integrated").

Thus, each plaintiff must individually bring claims that assert a right to recover more than the $75,000 jurisdictional amount. Having considered the pleadings and motions, the Court finds that there is at least a "plausible set of facts" that would allow each plaintiff to recover more than $75,000. *See Lane*, 529 F.3d at 557.

In their "Fourth Cause of Action" (Dkt. #10), Plaintiffs seek relief under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). Specifically, Plaintiffs assert that Defendant's acts would, if proven true, constitute false, misleading, or deceptive trade practices under the DTPA. And they claim that the DTPA is an available vehicle to bring these claims because: (1) they are "consumers," as defined by the DTPA; (2) the subject vehicles are "goods," as defined by the DTPA; and (3) the false, misleading, or deceptive trade practices were in connection with and the producing cause of Plaintiffs' economic damages.

Importantly, Plaintiffs also claim that Defendant's false, misleading, and deceptive trade practices or acts were committed intentionally. "Intentionally" under the DTPA means:

> [A]ctual awareness of the falsity, deception, or unfairness of the act or practice, or the condition, defect, or failure constituting a breach of warranty giving rise to the consumer's claim, coupled with the specific intent that the consumer act in

9

> detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

Tex. Bus. & Com. Code § 17.45(13). If the DTPA violation alleged was committed intentionally, the DTPA allows for recovery of up to three times the amount of economic damages and mental anguish damages sustained. *Id.* § 17.50(b)(1).

Accepting as true all well-pleaded allegations set forth in Plaintiffs' amended complaint and construing those allegations in the light most favorable to Plaintiffs, the Court finds that there is at least a plausible set of facts that would support a claim for relief for each individual plaintiff that would exceed $75,000. *See Truman*, 26 F.3d at 594. The DTPA violations that Plaintiffs allege here are breach of warranty (express and implied) and failure to disclose. Plaintiffs would thus be able to recover economic damages for breach of warranty plus any damages for failure to disclose. Then, assuming Plaintiffs could show intent on the part of Defendant, they would be entitled to up to three times economic damages. This means that each plaintiff would need only show that his or her economic damages exceed $25,000—a much lower bar than the $75,000 jurisdictional threshold.

Thus, because the Court finds that each plaintiff could plausibly prove (1) economic damages exceeding $25,000 and (2) that the Defendant intentionally committed deceptive trade practices causing those economic damages, Plaintiffs' claims meet the jurisdictional amount under 28 U.S.C. § 1332.

Accordingly, because the parties are completely diverse and Plaintiffs plausibly allege that their DTPA claims meet the jurisdictional amount, the Court has diversity jurisdiction over the civil action.

## II. 12(b)(6) Motion

Defendant moves the Court to dismiss under Rule 12(b)(6), arguing that Plaintiffs' claims are time barred or, alternatively, that Plaintiffs failed to state a claim upon which relief can be granted.

After reviewing the complaint, amended complaint, motion to dismiss, response, reply, and supplemental authorities, the Court finds that Plaintiffs have plausibly alleged timely breach of warranty claims or that the relevant statutes of limitations were tolled under fraudulent concealment tolling, discovery rule tolling, or class action tolling.

Moreover, the Court finds that Plaintiffs have adequately stated at least plausible claims upon which relief could be granted. Accordingly, Plaintiffs' pleadings are sufficient to survive a motion to dismiss under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) or, in the Alternative, to Sever Plaintiffs' Claims Pursuant to Rules 20 and 21 (Dkt. #11) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 2nd day of October, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE