# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RODERICK HARRIS, JOHN MAY, DERRICK DUNLAP, GEORGE WYNN, ANDREW CARRIER | § § § § | |
| *Plaintiffs*, | § § § | CIVIL ACTION NO. 4:19-CV-00016 Judge Mazzant |
| v. | § § | |
| BMW OF NORTH AMERICA, LLC., | § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant BMW of North America, LLC's Motion for Summary Judgment as to Plaintiffs Roderick Harris and George Wynn (Dkt. #56). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **DENIED**.

### BACKGROUND

Plaintiffs Roderick Harris and George Wynn are Texas residents and purchasers of BMW vehicles. Defendant, BMW of North America, LLC, is a Delaware limited liability company and the wholesale distributor of BMW vehicles sold in North America. Specifically, Defendant is engaged in the business of importing, assembling, marketing, distributing, and warranting BMW vehicles that are ultimately sold or leased in North America. Defendant does not itself sell or lease BMW vehicles; instead, it leaves the business of selling or leasing BMW vehicles to its network of regional and local BMW dealers.

Plaintiffs each own a BMW vehicle equipped with a V8, twin-turbocharged engine, referred to as the "N63." BMW released the N63 in 2008, advertising it as the next generation high performance engine designed for certain BMW vehicles, including 5 series, 6 series, 7 series, X5, and X6 models produced from 2009–2014. Vehicles equipped with the N63 have allegedly experienced a variety of problems since the engine's release in 2008. In particular, purchasers of N63-powered vehicles, including Plaintiffs, claim that the N63 consumes excessive amounts of engine oil, requiring frequent oil changes and engine repairs. And this alleged oil consumption defect, Plaintiffs claim, has diminished the value of their vehicles.

The amended complaint provides the following details about Plaintiffs and the subject vehicles: Roderick Harris purchased a 2010 BMW 5 Series 550i on October 30, 2013 for $51,312.80, and George Wynn purchased a 2013 BMW 7 Series 750i on August 6, 2014 for $78,776.40. The original owner of Harris's vehicle took possession on January 31, 2011, and the original owner of Wynn's vehicle took possession on December 20, 2012.

Plaintiffs assert multiple grounds for relief. First, Plaintiffs claim that Defendant made and subsequently breached express and implied warranties as to each vehicle. Second, Plaintiffs claim that Defendant's breach of warranty and failure to disclose the engine defects despite having knowledge of the defects constitute deceptive trade practices under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").

Plaintiffs submit that the Court has jurisdiction over the action pursuant to 15 U.S.C. § 2310 (the Magnuson–Moss Warranty Act ("MMWA")), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

On September 25, 2020, Defendant filed the present motion (Dkt. #56). On October 21, 2020, Plaintiffs filed their sealed response (Dkt. #78). On November 2, 2020, Defendant filed its

reply (Dkt. #87). On November 9, 2020, Plaintiffs filed their sur-reply (Dkt. #92). On December 2, 2020, Plaintiffs refiled their sur-reply under seal (Dkt. #95).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendant moves for summary judgment on all of Plaintiffs' claims. Specifically, Defendant argues that: (1) Plaintiffs' MMWA claims are time barred because the limitations period on a breach of warranty claim begins to run at the time of original delivery, not when the vehicle was tendered to a downstream purchaser; (2) Plaintiffs' breach–of–express–warranty claims are unsubstantiated because Plaintiffs could not identify a single instance in which Defendant failed to comply with its warranty obligations; and (3) Plaintiffs' DTPA claims fail as a matter of law.

Plaintiffs argue that the MMWA claims are timely, Defendant breached its express warranties, and Plaintiffs have stated a sufficient DTPA claim. The Court will address each argument in turn.

## I. Statute of Limitations

No dispute exists that absent an applicable tolling provision, Plaintiffs' MMWA claims are time-barred. In support of their timeliness argument, Plaintiffs contend that several theories apply to toll the statute of limitations. These theories include fraudulent concealment tolling, equitable tolling, and class action tolling.

The MMWA is a federal law cause of action. However, the language of the MMWA does not expressly provide a statute of limitations period. Thus, the Court will look to the Texas statute that substantively most closely resembles the federal action. *See Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (collecting cases) (noting that "[w]here federal law does not specify a limitations period, federal courts generally borrow the limitations period from the state statute which substantively most resembles the federal action"). The Texas statute most closely resembling the federal action is § 2.725(a) of the Texas Business and Commerce Code—it applies to both Plaintiffs' breach of express and implied warranty claims. The statute of limitations under § 2.725 is four years. TEX. BUS. & COM. CODE § 2.725(a). Thus, the Court will utilize a four-year statute of limitations on Plaintiffs' MMWA claims. *See Click v. Gen. Motos LLC,* No. 2:18-CV-455, 2020 WL 3118577, at *13 (S.D. Tex. 2020) (applying a four-year statute of limitations to a MMWA claim). The parties do not dispute the applicable limitations periods. The parties do disagree, however, about when the relevant statutes of limitations began and, after they began, whether they were tolled for long enough by the fraudulent concealment doctrine, the equitable tolling doctrine, or class action tolling to save the claims.

### a. Fraudulent Concealment Tolling

"[A] party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come

5

forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense." *KPMG Peat Marwick v. Harrison Co. Housing Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). "The elements of fraudulent concealment are: '(1) actual knowledge of the wrong, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong.'" *Adams v. Nissan North America, Inc.*, 395 F. Supp. 3d 838, 847 (S.D. Tex. 2018) (collecting cases). Notably, to launch a successful fraudulent concealment tolling attack on the statute of limitations, a plaintiff must show "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Welk v. Simpkins*, 402 F. App'x. 15, 18 (5th Cir. 2010) (citing *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied)).

Defendant first contends that Plaintiffs did not appropriately plead any applicable exception to § 2.725(b) of the Texas Business and Commerce Code, which would consider the time when Plaintiffs discovered the alleged oil consumption issue. Under § 2.725(b), the statute of limitations for breach of warranty claims starts to run upon delivery of the product. TEX. BUS. & COM. CODE § 2.275(b). However, Plaintiffs have pleaded facts sufficient to raise a genuine issue of material fact as to the applicability of fraudulent concealment tolling. Fraudulent concealment is an equitable doctrine that "estops the defendant from relying on the statute of limitations as an affirmative defense to [the] plaintiff's claim." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). The exception in § 2.725(b) delays the accrual of a party's cause of action. Fraudulent concealment, on the other hand, "tolls or suspends the running of limitations after it has begun because the defendant concealed from the plaintiff facts necessary for the plaintiff to know that he had a cause of action." *Mitchell Energy Corp.*, 958 S.W.2d at 439. Because Plaintiffs pleaded a doctrine that suspended the statute of limitations, no exception to § 2.725(b) was necessary.

Defendant alternatively contends that Plaintiffs cannot meet the second element of fraudulent concealment—namely, that a duty to disclose existed. Plaintiffs argue that only two elements must be proven: "(1) the defendant had knowledge that a wrong has occurred, and (2) a fixed purpose to conceal the facts necessary for the plaintiff to know that it has a cause of action" (Dkt. #78 at pp. 4–5). Plaintiffs further assert that "affirmative misrepresentation can support a fraudulent concealment theory of tolling—even in the absence of a duty to disclose" (Dkt. #78 at p. 5). Plaintiffs claim that "it [was] [Defendant's] agents (its authorized dealers) whom made affirmative misrepresentations to the Plaintiffs that the excessive consumption of oil was 'normal' and their car engines were defect-free" (Dkt. #95 at p. 2).

"The party asserting the fraudulent concealment defense to the statute of limitations bears the burden of showing that the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the one to whom it belongs." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000) (referencing *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1366 (5th Cir. 1984)). The Supreme Court of Texas has supported tolling the statute of limitations under the doctrine of fraudulent concealment by stating "[w]hen the defendant is under a duty to make a disclosure but fraudulently conceals the existence of the cause of action from the one to whom it belongs, the guilty party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered." *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974).[1]

Generally, "a manufacturer has no duty of disclosure to a consumer." *Adams*, 395 F. Supp. 3d at 849. Rather, "a duty to disclose in the context of fraudulent concealment arises only in

---

[1] One Texas appellate court has even stated that "[t]he gist of fraudulent concealment is the defendant's active suppression of the truth or failure to disclose when the defendant is under a duty to disclose." *Mitchell Energy Corp.*, 958 S.W.2d at 439.

limited circumstances where there is a fiduciary or confidential relationship." *Id.* at 849–50 (citing *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 453 (S.D.N.Y. 2017) (applying Texas law)) (collecting cases). Analogous to the present case, "[n]o duty arises in an arms-length transaction between a manufacturer and consumer, particularly where Plaintiffs did not purchase or lease their vehicles directly from the manufacturer." *Id.* at 850 (citing *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 453–54). While no duty generally exists, at least one Texas appellate court has suggested that a duty may arise when "one voluntarily discloses information" because then "the whole truth must be disclosed" or "when one makes a partial disclosure and conveys a false impression." *Vial v. Gas Sols., Ltd.*, 187 S.W.3d 220, 230 (Tex. App.—Texarkana 2006, no pet.) (citing *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Corpus Christi 1997, pet. denied)).

Defendant contends that Plaintiffs "do not allege facts demonstrating that a fiduciary relationship existed, or that [they] [were] involved in direct negotiations with [Defendant] for the purchase of their vehicles" (Dkt. #56 at p. 7). The Court agrees—no facts indicate that the parties were in a fiduciary or confidential relationship. Harris and Wynn both purchased their used vehicles from Classic BMW—an authorized dealer of Defendant (Dkt. #10 at p. 3) (Dkt. #10 at p. 8). As stated in *Adams*, "[i]n an arms-length transaction where none of the Plaintiffs dealt directly with the vehicle manufacturer, there is no duty." 395 F. Supp. 3d at 850. The Court therefore finds that no duty to disclose existed between Defendant and Plaintiffs.[2] The inquiry does not end there, however.

---

[2] In their amended Complaint, Plaintiffs allege that Defendant did have a duty to disclose the defect due to the "unreasonably dangerous circumstance that may result in a crash" resulting from the defect (Dkt. #10 at p. 20). However, "the duty to warn is unrelated to the duty to disclose a cause of action" and courts "cannot require manufacturers and retailers to advise their customers of every conceivable cause of action." *Seibert v, Gen. Motors Corp.*, 853 S.W.2d 773, 778 (Tex. App.—Houston [14th Dist.] 1993, no writ). Thus, the Court rejects Plaintiffs' position as to the existence of the duty to disclose.

8

Despite continued reiteration that duty is a necessary element of a fraudulent concealment claim, "Texas courts do recognize that 'affirmative misrepresentations can support a fraudulent concealment defense'" in the absence of a duty. *Welk*, 402 F. App'x at 18 (quoting *Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied)). However, a misrepresentation only tolls the statute of limitations until "the plaintiff knew enough that a reasonable person in the plaintiff's place would disbelieve the defendant's denial of improper conduct." *Mitchell Energy Corp.*, 958 S.W.2d at 442 (citing *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 586 (Tex. App.—Dallas 1991, writ denied)). Further, "a denial may constitute concealment where the parties are in a fiduciary relationship, or where the circumstances indicate that it was reasonable for the plaintiff to rely on defendant's denial." *Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1532–33 (5th Cir. 1988).

To survive summary judgment, Plaintiffs must raise a genuine issue of material fact regarding (1) actual knowledge by Defendant that a wrong has occurred and (2) a fixed purpose to conceal the facts necessary for Plaintiffs to know that they have a cause of action. *Santanna*, 954 S.W.2d at 890. Plaintiffs presented evidence showing that Defendant "knew that the oil consumption defect was caused by bad valve stem seals and that it hid this problem from Plaintiffs" (Dkt. #78 at p. 5). Specifically, Plaintiffs presented a Declaration supporting its allegation that "[Defendant] first became aware of oil consumption issues in N63 engines in December 2010, shortly after these engines were introduced to market" (Dkt. #78 at p. 5). "[Resolving] all reasonable doubts in favor of [Plaintiffs]," as is required at the summary judgment stage, the Court finds that Plaintiffs have presented genuine issues of material fact as to both elements of fraudulent inducement tolling. *Casey Enters., Inc.*, 655 F.2d at 602. Because a genuine issue of material fact exists as to tolling, summary judgment is improper on Plaintiffs' MMWA claims. *See KMPG Peat*

*Marwick*, 988 S.W.2d at 749 (noting that "a party asserting fraudulent concealment as an affirmative defense as to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense").

Because the Court finds that a genuine issue of material fact exists as to fraudulent concealment tolling, the Court need not address equitable or class action tolling.

## II. Breach of Express Warranty Claims

Both parties agree that Plaintiffs "must allege (1) an express affirmation of fact or promise by the seller relating the goods; (2) that such affirmation of fact or promise by the seller became a part of the basis of the bargain; (3) that Plaintiffs relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmation of fact or promise; (5) Plaintiffs were injured by such failure of the product to comply with the express warranty; and (6) that such failure was the proximate cause of Plaintiffs' injury" to state a claim for breach of express warranty. *Johnson v. Philip Morris*, 159 F. Supp. 2d 950, 952 (S.D. Tex. 2001) (quoting TEX. BUS. & COM. CODE § 2.313(a)(1) (Vernon 1994)).

Defendant argues that Plaintiffs "do not allege what 'affirmation, promise or description' about their Vehicle became the basis of their purported bargains with [Defendant], much less how those terms were allegedly breached" (Dkt. #56 at p. 12). Plaintiffs respond with evidence supporting each element of their claim.

After a careful review of the record and the arguments presented, the Court is not convinced that Defendant has met its burden of demonstrating that there is no genuine issue of material fact on Plaintiffs' claims.

10

### III. DTPA Claims

Defendant makes a twofold argument as to why Plaintiffs' DTPA claims fail as a matter of law. First, Defendant claims that Plaintiffs' tolling arguments do not save their DTPA claims because Plaintiffs admit they first became aware of the alleged oil consumption defect within the first year they owned their vehicles and the legislature caps DTPA tolling at a maximum of 180 days. Second, Defendant argues that Plaintiffs' DTPA claims based on Defendant's alleged unconscionable conduct are barred by the economic loss rule.

Where state law provides the underlying cause of action and federal jurisdiction is based on diversity of citizenship, state law provides the applicable statute of limitations. *West v. Conrail*, 481 U.S. 35, 38–39 (1987). Texas law provides the underlying cause of action here; thus, the relevant statute of limitations for DTPA claims is two (2) years. TEX. BUS. & COM. CODE § 17.565.

#### a. Discovery Rule Tolling

For DTPA claims, the statute of limitations begins to run when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565. Further, "the statute of limitations begins to run when a party has actual knowledge of a wrongful injury," *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 207 (Tex. 2011) (citing *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)), despite the party not yet knowing "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, 146 S.W.3d 79, 93–94 (Tex. 2004) (citations omitted).

Plaintiffs allege that they did not actually know of the defect until July 2018. The discovery rule considers not only what the Plaintiffs *actually* knew, but also what Plaintiffs should have

discovered in the exercise of reasonable diligence. However, because "the issue of whether a plaintiff was reasonably diligent in discovering the defect or fraud" or whether a plaintiff "should have discovered the fraud or defect earlier" is "typically a fact question reserved for the jury," the Court looks only to whether Plaintiffs pleaded sufficient facts to support their contention that they exercised reasonable diligence. *Adams*, 395 F. Supp. 3d at 851.

Plaintiffs claim that "they were not aware of any facts that put them on notice that they had suffered a *legal* injury until July 2018, when they learned about a class action lawsuit filed against BMW relating to N63 engines" (Dkt. #78 at p. 18). Plaintiffs further claim that "[b]ecause both Plaintiffs accepted Classic BMW's explanation that it was 'normal' for their cars to burn oil, they had no reason to search [the] Internet for oil consumption complaints, did not search for such complaints, and have not become aware of such complaints until July 2018" (Dkt. #78 at p. 18). According to Plaintiffs, it was not until they learned of the pending class action that "they came to understand that the engines in their cars were defective and the oil consumption was due to that defect" (Dkt. #78 at p. 18).

The facts alleged by Plaintiffs are sufficient to present a genuine issue of material fact as to whether Plaintiffs exercised reasonable diligence. Because a genuine issue of material fact exists as to discovery rule tolling, the Court need not address fraudulent concealment tolling under the DTPA.[3]

---

[3] Defendant argues that tolling under the DTPA is capped at 180 days. However, that 180 day maximum applies to fraudulent concealment tolling under the DTPA. TEX. BUS. & COM. CODE § 17.565 (stating that "[t]he period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure to timely commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action").

### b. Economic Loss Rule

Defendant alleges that Plaintiffs' DTPA claims fail as a matter of law because their damages are limited to those arising from their breach of warranty claims. Plaintiffs claim that they have explicitly alleged that Defendant has breached duties that are independent of the contractual undertaking and that the harm suffered is not merely the economic loss of a contractual benefit, including, but not limited to, Defendant's breach of its duty owed under the MMWA and under the UCC.

"An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983). The Fifth Circuit has held that "as with the economic loss rule, the inquiry is whether the alleged unconscionable conduct 'could have resulted in the absence of a contract between the parties.'" *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)). Further, when interpreting Texas law, "[the Fifth Circuit] [has] stated that where 'allegedly unconscionable statements' are made but where the breach of contract causes the harm, a plaintiff cannot maintain a claim for unconscionable conduct under the DTPA." *Id.* (quoting *Malsom v. Match.com, L.L.C.*, 540 F. App'x 412, 415 (5th Cir. 2013) (unpublished)). "While . . . a breach of contract does not itself constitute a DTPA violation, the Texas Supreme Court has never held that the *underlying conduct* that breaches an agreement cannot violate the DTPA merely because it also breaches an existing contractual obligation. Put differently, if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015).

At least one Texas court has found that a duty arises from § 17.50 of the DTPA—"to refrain from engaging in or using deceptive trade practices as set out in Section 17.50(a)(3)." *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 541 (Tex. App.—Eastland 2012, no pet.). That court held that the duty "was one that . . . arose outside, and existed independently of, the contract" between the parties. *Id.*

Plaintiffs allege that Defendant knew or should have known of the defect in the engine that caused excessive consumption of oil. Further, Plaintiffs claim that the defect was a significant safety concern. Despite purported knowledge of the defect, Plaintiffs contend that Defendant failed to disclose the defects to Plaintiffs *at the time of purchase and thereafter*. Plaintiffs allege that Defendant's misrepresentations induced Plaintiffs to enter agreements they would not have if they had known that the vehicles and engines were defective at the time of purchase. The contractual violations and alleged misrepresentations arose from the same set of operative facts. However, the duty imposed by § 17.50(a)(3) of the DTPA applies to the misrepresentations taking place *before* the contract was ever formed—even though they gave rise to the eventual agreement. Thus, Defendant has not met its burden in showing that the economic loss rule bars Plaintiffs' DTPA claims. *See Salek v. SunTrust Mortg., Inc.*, No. 2018, WL 3756887, at *8 n. 23 (S.D. Tex. 2018) (holding that the economic loss doctrine barred Plaintiff's DTPA claim because "unlike the plaintiff in *Searcy*, who had asserted actionable conduct outside of the relevant contract by alleging that the defendant made misrepresentations *that induced the plaintiff to enter that agreement*, Plaintiff here has failed to allege Defendant breached a duty to her that 'arose outside of' the Deed of Trust" (emphasis added)).

## CONCLUSION

It is therefore **ORDERED** that Defendant BMW of North America, LLC's Motion for Summary Judgment as to Plaintiffs Roderick Harris and George Wynn (Dkt. #56) is hereby **DENIED**.

SIGNED this 3rd day of December, 2020.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE