# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RODERICK HARRIS, JOHN MAY, DERRICK DUNLAP, GEORGE WYNN and ANDREW CARRIER | § § § § | |
| *Plaintiffs*, | § § § | Civil Action No. 4:19-CV-00016 Judge Mazzant |
| v. | § § | |
| BMW OF NORTH AMERICA, LLC, | § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Strike and Exclude Defendant's Expert Witness (Dkt. #115). Having considered the motion and the relevant pleadings, the Court finds the motion should be **DENIED**.

## BACKGROUND

Plaintiffs are purchasers of BMW vehicles. Defendant, BMW of North America, LLC, is a Delaware limited liability company and the wholesale distributor of BMW vehicles sold in North America. Defendant is engaged in the business of importing, assembling, marketing, distributing, and warranting BMW vehicles that are ultimately sold or leased in North America. Defendant does not itself sell or lease BMW vehicles; instead, it leaves the business of selling or leasing BMW vehicles to its network of regional and local BMW dealers.

Plaintiffs each own a BMW vehicle equipped with a V8, twin-turbocharged engine, referred to as the "N63." BMW released the N63 in 2008, advertising it as the next generation high performance engine designed for certain BMW vehicles, including 5 series, 6 series, 7 series, X5,

and X6 models produced from 2009 to 2014. Vehicles equipped with the N63 have allegedly experienced a variety of problems since the engine's release in 2008. In particular, purchasers of N63-powered vehicles, including Plaintiffs, claim that the N63 consumes excessive amounts of engine oil, requiring frequent oil changes and engine repairs. Plaintiffs claim this alleged oil consumption defect has diminished the value of their vehicles.

In the operative Complaint, Plaintiffs assert multiple grounds for relief. First, Plaintiffs claim that Defendant made and subsequently breached express and implied warranties as to each vehicle. Second, Plaintiffs claim that Defendant's breach of warranty and failure to disclose the engine defects despite having knowledge of the defects constituted deceptive trade practices under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").

On June 8, 2021, Plaintiffs filed the present motion seeking to strike Defendant expert, Michael Murray ("Murray") (Dkt. #115). On June 22, 2021, Defendant filed a response (Dkt. #123).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Plaintiffs ask this Court to exclude Murray's testimony for three reasons: 1) Murray's report is unreliable because it is impossible to determine whether he himself actually prepared the information in his report; 2) Murray's expected trial testimony runs afoul the 801(c) hearsay rule; 3) the report is merely an attempt for defense counsel to provide testimony; and 4) Murray's expert opinions are not based on objective criteria. The Court addresses each point in turn. Ultimately, however, Plaintiff's objections go to the weight Murray's testimony should be given. Defendant does not need to prove that Murray is correct—only that he is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). It has done so.

### 1. Whether Murray prepared his own report

Plaintiffs claim Murray did not prepare his own report, and thus, the Court should strike his testimony. Specifically, Plaintiffs draw attention to the Defendant's expert opinion (the "Alvord Report") in the pending case, *Schneider et al. v. BMW of North America*, No. 18-cv-122239 (D. Mass.), and analyze its stark similarities to Murray's report in the case at bar (Dkt. #115 at pp. 8–10). Plaintiffs also highlight Murray's deposition, during which he "c[ould] not even direct the Plaintiffs or this Court to those portions of the report, its methodologies and opinions which are actually his rather than those supplied by another" (Dkt. #115 at p. 10).

Defendants respond that "Rule 26(a)(2)(B) requires [] an expert report 'be prepared and signed by the witness,' but an attorney may assist the expert in drafting the report" (Dkt. #123 at p. 6) (quoting *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 4:15-CV-766, 2017 WL 3388020, at *2 (E.D. Tex. Aug. 3, 2017) and Fed. R. Civ. P. 26(a)(2)(b)). Further, Murray "substantially participated in the drafting process, and, most importantly, the reports constitute his own opinions based on his personal knowledge of the relevant procedures, his review of the relevant records"

and his three decades of experience with BMW products (Dkt. #123 at p. 7). Lastly, Defendant contends that any similarities between Murray's report and the Alvord Report result from the decades of specific training and experience both experts have obtained regarding Defendant's procedures (Dkt. #123 at p. 9). Additionally, the experts in both cases were tasked with responding to identical reports from the Plaintiffs' expert, Darren Manzari ("Manzari"), rendering those responses similar in nature (Dkt. #123 at p. 9).

At bottom, Rule 26(a)(2)(B) "requires that an expert report 'be prepared and signed by the witness.'" *Tech Pharm.*, 2017 WL 3388020, at *2 (quoting FED. R. CIV. P. 26(a)(2)(b)). As both parties note, however, this does not preclude counsel from assisting in the preparation. *See id.* So long as the report is based on the expert's prior substantive input, is signed by the witness, and reflects the testimony to be offered by the witness, the Rule 26 requirements are met. *Id.*; *see also Zoch v. Daimler, A.G.*, No. 4:17-cv-578, 2018 WL 4610569 (E.D. Tex. Sept. 25, 2018); *Bartlett v. Mut. Pharm. Co.*, 742 F. Supp. 2d 182, 197 (D.N.H. 2010). Here, Murray testified that he "sat with counsel, [] reviewed Manzari's report line by line, paragraph by paragraph, and [] came up with a rebuttal" (Dkt. #123 at p. 7). He consistently testified that he and defense counsel "created the report together" and that "he was not told by counsel, or anyone else . . . what to opine or believe with respect to Manzari's opinions, or the Plaintiffs' vehicles" (Dkt. #123 at pp. 7–8).

To be sure, portions of Murray's report do bear great resemblance to the Alvord Report (*see* Dkt. #115 Exhibits G–H). That said, the resemblance does not render Murray's report or expected testimony unreliable. As mentioned, Murray testified that the report is based on his input and reflects the testimony he will offer at trial. Further, his report is based on his own 30 plus years of experience at BMW. If Plaintiffs wish to poke holes in Murray's report or testimony, they may engage in vigorous cross-examination at trial.

6

### 2.  Whether Murray's expected testimony will consist of improper hearsay

Plaintiffs argue that Murray's expected trial testimony relies on hearsay evidence barred under Federal Rule of Evidence 803(c). Plaintiffs point to Murray's deposition testimony in which he answered he would "read the entire report" if asked at trial about any portion of it. (Dkt. #115-6 at p. 125:14–20). The Court notes that, of course, Murray would not be permitted to read his report at trial if offering any portion for the truth of the matter asserted. *See Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014). However, the Court also recognizes that Murray has never testified in court as an expert witness, which renders him "[un]familiar with the process [and] requirements" (Dkt. #123 at p. 12). Defendant asserts that it "does not intend to have Murray read his report on direct examination" (Dkt. #123 at p. 12). Accordingly, that Plaintiffs expect Murray to rely on hearsay at trial is not a proper basis for the Court to presently exclude his expert testimony. Instead, Plaintiffs may object to hearsay in a motion in limine or at trial.

### 3.  Whether Murray's report or expected testimony is an improper attempt for defense counsel to provide testimony

Plaintiffs argue Murray's testimony should be excluded because "it is an improper attempt by [Defendant's] lawyers to provide trial and expert testimony as to essential facts" (Dkt. #115 at p. 11). But it is not necessarily improper for an expert to rely on information supplied by counsel. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) ("[Defendant's] second objection, that [plaintiff's expert] relied on information supplied by plaintiff's counsel in reaching his conclusion, also fails. This does not require the exclusion of the expert's testimony."). Nor is it necessarily improper for an assistant or counsel to assist in drafting portions of a report. *Tech Pharm.*, 2017 WL 3388020, at *2 (denying motion to exclude an expert report where expert "testified that defense counsel drafted sections of his report, which he edited and ultimately agreed

with"); *Zoch*, 2018 WL 4610569, at *7 (denying motion to exclude expert report where "an attorney assisted [expert] in preparing his report but . . . did not 'ghost-write' the report").

Plaintiffs' arguments go to the weight Murray's testimony should be given, not its reliability. *See Zoch*, 2018 WL 461069 at *6 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). As stated, Murray's deposition indicates he exercised control and authority over the report, which supports a finding of reliability. If Plaintiffs wish to attack this credibility at trial, they may engage in vigorous cross-examination.

### 4.   Whether Murray's Report and Testimony is Unreliable

Plaintiffs discuss myriad reasons why Murray's conclusions are based on insufficient facts and unreliable methods but specifically highlight that Murray did not rely on or base his opinions on any independent objective studies or literature in arriving at his conclusions. In sum, Plaintiffs contend that Murray's conclusions are "*ipsi dixit*" in that they "are based only on his subjective expert knowledge and opinion" (Dkt. #115 at p. 15). Defendants rebut this assertion, stating, among other things, that "an attack on Murray's expertise . . . would directly undermine the very methodology purportedly used by [Plaintiffs'] own expert" because Manzari testified that Murray's "steps" were "logical and in place," and that Manzari did not "really oppos[e] Mr. Murray in some of his procedures" (Dkt. #123 at p. 16). Further, Defendants argue that an expert need not lean on learned treatises or peer-reviewed literature to ensure reliability.

The Court finds that Defendant has met its burden of showing Murray is a reliable expert. He has over thirty years of experience at BMW. He was a Technical Service Engineer at BMW prior to stepping into his current role as a Senior Product Engineer. During his career, "Murray has traveled the U.S. assisting and training [Technical Service Engineers], as well as technicians at

BMW authorized centers, to diagnose, troubleshoot and repair BMW vehicles in accordance with BMW standards and specifications" (Dkt. #123 at p. 4). He has also "authored most of the internal reports pertaining to the N63 engine" at issue in this case (Dkt. #123 at p. 4). As previously discussed, Murray testified that he relied on his expertise in coming to the conclusions in his report for the present case.

Reliance on literature, treatises, or other publications to prepare an expert report is only one factor the Court assesses when determining whether an expert is reliable. The Supreme Court itself has stated that courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies *or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire*, 526 U.S. at 152 (emphasis added); *see also Pipitone*, 288 F.3d at 247. Here, Murray's personal experience in the field speaks for itself, and nothing Plaintiffs point to has convinced the Court that Murray did not base his approach or diagnosis on anything other than generally accepted principles. Again, if Plaintiffs wish to attack Murray's methods or conclusions, they will have the opportunity for vigorous cross-examination at trial.

## CONCLUSION

For the foregoing reasons, the Court finds Defendant has met its burden of showing that Murray's expert opinion is reliable.

It is therefore **ORDERED** that Plaintiffs' Motion to Strike and Exclude Defendant's Expert Witness (Dkt. #115) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 16th day of December, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE